Todd A. Hammer
Marcel A. Quinn
HAMMER, QUINN & SHAW PLLC
100 Financial Drive, Suite 100
P.O. Box 7310
Kalispell, MT 59904-0310
Telephone:   (406) 755-2225
Facsimile:   (406) 755-5155
toddhammer@attorneysmontana.com
marcelquinn@attorneysmontana.com
Attorneys for Plaintiff

2017 NOV 22 PM 12: 35
FILED
BY _____ DEPUTY

MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| WHITEFISH ENERGY HOLDINGS LLC, Plaintiff, vs. ARC AMERICAN, INC., Defendant | Cause No. DV-17-1189 D<br><br>APPLICATION FOR PRELIMINARY INJUNCTION |
|---|---|

COMES NOW the above-named Plaintiff, Whitefish Energy Holdings LLC ("Whitefish Energy"), and hereby applies for a preliminary injunction: (1) enjoining Defendant Arc American, Inc., ("Arc") from misrepresenting there are amounts due and owing under its subcontract agreement with Whitefish Energy; and (2) ordering Arc to immediately withdraw and correct all misrepresentations previously made in this regard, including its November 16, 2017 letter to the Puerto Rico Electric Power Authority ("PREPA") which resulted in the withholding of tens of millions of dollars in payments due to Whitefish Energy. Such order is appropriate to avoid irreparable harm and injury to Whitefish Energy.

EXHIBIT C

## FACTS

Plaintiff Whitefish Energy Holdings LLC is a Montana limited liability company with its principal place of business in Flathead County, Montana. (Declaration of Andrew Techmanski filed contemporaneously herewith, ¶ 2.)

Whitefish Energy entered into a contract with The Puerto Rico Electric Power Authority ("PREPA") for electrical grid reconstruction after hurricane Maria. (Decl. Techmanski, ¶ 3.) On or about September 30, 2017, Whitefish Energy entered into a subcontract with Arc American, Inc. (hereinafter "Arc"). (Decl. Techmanski, ¶ 4.)

The subcontract is a "pay-when-paid" contract, specifying that payment from the owner, PREPA, is a condition precedent to payment being made by Whitefish Energy to Arc. It further specifies Whitefish Energy is required to pay Arc within seven days of receipt of payment from PREPA. The subcontract states:

> **10.2 Progress and Final Payments.** <u>Receipt of payment by Contractor from Owner for Subcontract Work is a condition precedent to payment by Contractor to Subcontractor.</u> Subcontractor acknowledges that it relies on the credit of Owner, not Contractor, for payment of Subcontract Work. Progress payments, shall be made to Subcontractor, for Subcontract Work satisfactorily performed, no later than seven (7) days after receipt by Contractor of payment from Owner for Subcontract Work...

(Decl. Techmanski, ¶ 4, Ex. A, pg. 2; emphasis added)

Under no scenario does the subcontract require or allow payment to Arc prior to Whitefish Energy being paid. Further, under no scenario does the subcontract allow Arc to seek or procure direct payment from PREPA when PREPA has not paid Whitefish Energy.

Whitefish Energy has timely paid all subcontractors, including Arc, for subcontractor services for which Whitefish Energy has received payment from PREPA. (Decl. Techmanski, ¶ 5.) There are outstanding invoices for work issued by Arc to Whitefish Energy for which

Whitefish Energy has not received payment from PREPA. (Decl. Techmanski, ¶ 6.) The invoiced amounts, therefore, are not yet due and owing. The condition precedent for payment – "receipt of payment by Contractor form Owner for Subcontract Work" – has not been fulfilled. This is not due to any fault by Whitefish Energy, and in fact, the delayed payment by PREPA has been exacerbated by Arc's improper actions in breach of the Subcontract.

More specifically, without any prior notice to Whitefish Energy, Arc sent a letter dated November 16, 2017, directly to PREPA in which Arc told PREPA, "This is to inform PREPA that Whitefish has failed to pay monies due and owing Arc under the Subcontract in an amount exceeding $8,736,054.03." (Decl. Techmanski, ¶ 7, Ex. B.) However, the truth is Whitefish Energy has not been paid by PREPA for any of the amount alleged. (Decl. Techmanski, ¶ 8.) Arc's statement that the money is "due and owing" from Whitefish Energy is false, and contrary to the plain and unambiguous terms of the subcontract.

In the same letter, Arc requested "PREPA forebear from paying to Whitefish the current amount owed by Whitefish to Arc ... and instead pay those moneys directly to, or hold them in escrow for, Arc..." (Decl. Techmanski, ¶ 7, Ex. B.) Arc's demand for direct payment from PREPA is contrary to and in breach of the unambiguous payment provisions in the subcontract. Arc agreed to accept payment from Whitefish Energy for services provided and only after Whitefish Energy was paid by PREPA for the work performed. Arc is not permitted to circumvent the payment structure, and seek payment directly from PREPA.

Whitefish Energy has been advised by PREPA, as a result of the letter and Arc's claim for payment, PREPA must withhold from Whitefish Energy the amount of payment claimed. (Decl. Techmanski, ¶ 9.) Despite Whitefish Energy's repeated requests to Arc to withdraw its letter to PREPA, Arc has refused to do so. (Decl. Techmanski, ¶ 14.) PREPA's withholding of

payment due to Arc's improper and false letter has caused and contributed to Whitefish Energy being forced to suspend operations in Puerto Rico due to the lack of payment. (Decl. Techmanski, ¶ 12.)

On or about September 30, 2017, Whitefish Energy and Arc entered into a Non-Compete Agreement. (Decl. Techmanski, ¶ 10.) As part of the Non-Complete Agreement, Arc agreed to a non-solicitation clause which states:

> Non-Solicitation. From the date of execution hereof and up until and including one year after the last scope of work completion, Subcontractor shall not: (i) solicit the business of any person or entity who is Contractor's client or customer for the purpose of providing any services to such person or entity (whether Non-Compete Business, as hereinafter defined, or otherwise); (ii) cause, induce or attempt to cause or induce any client, customer, supplier, licensee, licensor, franchisee, employee, consultant or other business relation of Contractor or its business to cease doing business with Contractor, to deal with any competitor of Contractor or in any way interfere with his, her or its relationship with Contractor; or (iii) hire, retain or attempt to hire or retain any employee of Contractor or in any way interfere with the relationship between Contractor and any of its employees or independent contractors.

(Decl. Techmanski, ¶ 10, Ex. C, pg. 2, Section 2(b); emphasis added). The Non-Compete Agreement prohibits Arc from "in any way interfer[ing]" with Whitefish Energy's relationship with PREPA.

Arc's misrepresentation to PREPA that there are outstanding amounts due and owing under the subcontract has directly interfered with Whitefish Energy's relationship and contract with PREPA. Likewise, Arc's request for direct payment from PREPA contravenes the terms of the prime contract and subcontract. Arc's conduct, including its November 16, 2017 letter, is substantially and irreparably interfering with Whitefish Energy's relationship with PREPA, and has caused PREPA to withhold payment from Whitefish Energy, which only exacerbates the payment issues for Whitefish Energy and all of its subcontractors, including Arc. Whitefish Energy is permitted to seek "injunctive relief from the District Court of Flathead County,

Montana, barring or preventing Subcontractor from… violating this Non-Compete." (Decl. Techmanski, Ex. C, pg. 2.) Such relief is appropriate.

Whitefish Energy is agreeable to PREPA paying Arc directly for any unpaid, approved invoices, contemporaneously with the payment of the balance of approved invoices to Whitefish Energy. (Decl. Techmanski, ¶ 15.) Arc, however, refuses to cooperate in this regard. (*Id.*) Arc is attempting to leverage the current payment issue to obtain benefits and releases to which Arc is not contractually or legally entitled. To withdraw the November 16, 2017 letter, Arc demands Whitefish Energy authorize PREPA to pay Arc more than it is currently due under the Subcontract, release Arc from a Non-Compete Agreement, and release all legal rights and obligations under the entire subcontract, which would include any issues with Arc's performance of work and indemnity obligations for safety and other issues. (Decl. Techmanski, ¶ 16.) Through its refusal to withdraw its false letter to PREPA, Arc is leveraging Whitefish Energy for a release of any and all claims against Arc while ignoring the plain and unambiguous terms of payment and conditions in the subcontract to which it previously agreed, including the condition precedent that Whitefish Energy be paid before Arc receives payment and Arc's obligations to perform safe and complete work without defects.

Given Whitefish Holding's contract with PREPA concludes on November 30, 2017 and Whitefish Holding has critical work it needs to complete for PREPA by that date, the non-payment of amounts due and cessation of work is and will cause great and irreparable injury to Whitefish Energy. (Decl. Techmanski, ¶ 13.)

Whitefish Energy has in good faith attempted to resolve the current dispute without the need for court involvement. Whitefish Energy now seeks the preliminary injunction authorized by Montana law and the express provisions of the Non-Compete Agreement.

## ARGUMENT

The grant or denial of a preliminary injunction is a matter which lies with the sound discretion of the trial court. *City of Billings v. County of Water Dist. Of Billings Heights*, 935 P.2d 246, 250 (Mont. 1997); *Shammel v. Canyon Resources Corp.*, 82 P.3d 912, 916 (Mont. 2003). Montana's statutes permit an injunction to be ordered:

> (1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
>
> (2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant; [or]
>
> (3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual…

(§27-19-201, MCA).

Each of the subsections above provides independent grounds for the issuance of the requested preliminary injunction.

"In conducting a hearing on a motion for a preliminary injunction, it is not the province of a district court to determine matters that may arise during a trial on the merits." *Knudson v. McDunn* (1995), 271 Mont. 61, 65, 894 P.2d 295, 298. The relevant inquiry is whether the moving party has made out a *prima facie* case under any of the disjunctive subsections contained in §27-19-201, MCA, or shown "that it is at least doubtful whether or not he will suffer irreparable injury before his rights can be fully litigated." *Valley Christian Sch. v. Mont. High Sch. Ass'n*, 2004 MT 41, ¶ 18, 320 Mont. 81, 87-88, 86 P.3d 554, 558.

The subcontract is clear and unambiguous, calling for Arc to be paid within seven days of Whitefish Holds being paid by the owner, PREPA. The subcontract states:

**10.2 Progress and Final Payments.** <u>Receipt of payment by Contractor from Owner for Subcontract Work is a condition precedent to payment by Contractor to Subcontractor.</u> Subcontractor acknowledges that it relies on the credit of Owner, not Contractor, for payment of Subcontract Work. Progress payments, shall be made to Subcontractor, for Subcontract Work satisfactorily performed, no later than seven (7) days after receipt by Contractor of payment from Owner for Subcontract Work...

(Ex. A, pg. 2; emphasis added).

In Montana, the construction and interpretation of a contract is a question of law. Courts must interpret the language of contract provisions according to their plain, ordinary meaning. *Ophys v. Fritz*, 2000 MT 251, ¶ 19, 301 Mont. 47, 11 P.3d 1192.

> The fundamental tenet of modern contract law is freedom of contract; parties are free to mutually agree to terms governing their private conduct as long as those terms do not conflict with public laws. This tenet presumes that parties are in the best position to make decision in their own interest. Normally, in the course of contract interpretation by a court, the court simply gives effect to the agreement between the parties in order to enforce the private law of the contract.

*Arrowhead School Dist. No. 75 v. Klyap*, 2003 MT 294, ¶ 20, 318 Mont. 103, 79 P.3d 250.

Here, the subcontract could not be plainer. Payment from PREPA to Whitefish Energy is a "condition precedent" to payment being owed from Whitefish Energy to Arc. As the Montana Supreme Court has stated, "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance... If the condition is not fulfilled, the right to enforce the contract does not come into existence." *Mgt., Inc. v. Mastersons, Inc.*, 189 Mont. 435, 440-41, 616 P.2d 356, 360 (1980).

"Pay-if-paid" clauses are simply one example of a valid condition precedent. As the leading contracts treatise, Williston on Contracts, states:

> [I]t has long been the rule that, absent a statute prohibiting the provision, if the parties clearly do intend that the risk of nonpayment be borne by the subcontract and clearly express that intent by making the right of the subcontractor to be paid expressly conditional on the receipt of such payment by the contractor from the

APPLICATION FOR PRELIMINARY INJUNCTION - Page 7

owner, they may by contract allocate that risk, and the courts will enforce that freely bargained-for allocation of risk.

(8 Williston on Contracts § 19:59 (4th ed.)).

Moreover, the pay-when-paid clause is supported by Montana law. Section 28-2-2103(2)(a), MCA of Montana's Prompt Pay statute specifies, "Within 7 days after a contractor receives a periodic or final payment from an owner or a state agency, the contractor shall pay the subcontractor, if any, the full amount due the subcontractor in accordance with the subcontract for work performed or materials provided in accordance with that subcontract." Pay-when-paid clauses are valid and recognized under Montana statutory law. The subcontract is valid and enforceable as written.

Arc, in disregard of its subcontract with Whitefish Energy and Montana law, advised PREPA that in excess of eight million dollars is "due and owing" from Whitefish Energy, when in fact no funds were due and owing to Arc under the subcontract. Moreover, Arc requested PREPA to withhold funds due and owing to Whitefish Energy, and instead make direct payment of over eight million dollars directly to Arc. This was despite the fact total amount of Arc's invoices represented in Whitefish Energy's invoices pending before PREPA were less than a third of that amount. Arc's request interferes with Whitefish Energy's contract with PREPA, and is contrary to and in breach of the unambiguous payment provisions in the subcontract.

Arc's conduct renders it liable for the litany of causes of action alleged in the complaint, including negligent misrepresentation, breach of the covenant of good faith and fair dealing, tortious interference with business relations, negligence and breach of the Non-Compete Agreement. Whitefish Holdings is likely to succeed on such causes of action.

A preliminary injunction is appropriate under three of the three disjunctive subsections contained in §27-19-201, MCA.

Subsection (1) provides an injunction may issue "when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually." Whitefish Energy is entitled to the relief demanded, which includes injunctive relief to mandate compliance with the subcontract, Non-Compete Agreement, and Montana law.

Likewise, an injunction may issue under Subsection (2) which applies "when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant." Here, Arc's conduct has contributed to PREPA's withholding of tens of millions of dollars owed to Whitefish Holdings, resulting in Whitefish Energy being forced to suspend operations in Puerto Rico. PREPA's withholding of payments has also caused delays in payments to a dozen other subcontractors. Given Whitefish Holding's contract with PREPA concludes on November 30, 2017 and Whitefish Holding has critical work it needs to complete for PREPA by that date, the non-payment of amounts due and cessation of work is and will cause great and irreparable injury to Whitefish Energy.

Finally, Subsection (3) likewise justifies the issuance of the requested preliminary injunction. It applies "when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual..." Arc's actions directly contravene the payment term of the subcontract and breach the terms of the Non-Compete Agreement. Arc is acting in direct violation of Whitefish Energy's rights under the agreements and Montana law. Here, time is of the essence. Millions of dollars in payments are in limbo and critical work to restore key transmission lines in Puerto Rico has been suspended. In the absence of a preliminary injunction, which is expressly

authorized under the Non-Compete, resolution of this issue may be delayed months or even years. Lengthy litigation would be ineffectual to deal with the immediate issue at hand. Whitefish Energy is entitled to, and hereby requests, the Court to issue a preliminary injunction to require Arc to abide by the Subcontract and Non-Complete in order to preserve the status quo and allow payment from PREPA to allow the critical work necessary to the people of Puerto Rico to continue.

For the foregoing reasons, as well as the arguments and evidence to be presented at the preliminary injunction hearing, Whitefish Energy respectfully requests the Court to issue a preliminary injunction (a) enjoining Arc from representing there are amounts due and owing under its subcontract agreement with Whitefish Energy and (b) requiring Arc to withdraw and correct all misrepresentations previously made in this regard, including its November 16, 2017 letter to the Puerto Rico Electric Power Authority ("PREPA") which resulted in the withholding of millions of dollars in payments due to Whitefish Energy.

Dated this 22nd day of November, 2017.

HAMMER, QUINN & SHAW PLLC

_____
Todd A. Hammer
Marcel A. Quinn
P.O. Box 7310
Kalispell, MT 59904-0310
Attorneys for Plaintiff