Dan Wilson
District Court Judge, Dept. 4
Flathead County Justice Center
920 South Main Street, Suite 310
Kalispell, MT 59901
Phone: (406) 758-5906

CLERK OF DISTRICT COURT

2017 NOV 28  AM 10: 59

FILED

BY _____
DEPUTY

ELEVENTH JUDICIAL DISTRICT COURT
FLATHEAD COUNTY, MONTANA

| | | |
|---|---|---|
| WHITEFISH ENERGY HOLDINGS, LLC, | ) ) ) | Cause No. DV-17-1189D |
| Plaintiff, | ) ) | ORDER VACATING HEARING |
| vs. | ) ) ) | |
| ARC AMERICAN, INC., | ) ) | |
| Defendant. | ) | |

Defendant ARC American, Inc. has appeared and given notice the above-action has been removed to the United States District Court for the District of Montana pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

The hearing set to occur before this Court on November 29, 2017, at 3:00 p.m. is VACATED.

SO ORDERED.

DATED: November 28, 2017.

_____
Dan Wilson
District Court Judge

c:   Todd A. Hammer / Marcel A. Quinn
     HAMMER QUINN & SHAW PLLC
     PO Box 7310
     Kalispell, MT 59904-0310

11/28/17
SHA

10

Scott D. Hagel
Crowley Fleck PLLP
PO Box 759
MT 59903-0759

11/28/17
SMB

CLERK OF DISTRICT COURT

2017 NOV 27 PM 3: 51

FILED

BY _____ DEPUTY

MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| WHITEFISH ENERGY HOLDINGS LLC, | Cause No. DV-17-1189D |
| Plaintiff, | ORDER TO SHOW CAUSE |
| vs. | HEARING |
| ARC AMERICAN, INC., | |
| Defendant | |

A hearing on Plaintiff's Application for Preliminary Injunction against Defendant ARC American Inc., to show cause as to why a preliminary injunction should not be granted is hereby set for **November 29**, 2017, at **3:00** **p**.m. before the Honorable **Dan Wilson** in a Courtroom on the third floor of the Flathead County Justice Center. Said hearing is expected to last approximately 1 hour.

Dated this **22** day of November, 2017.

_____
District Judge

8

# AFFIDAVIT OF PROCESS SERVER

**Client Info:**

HAMMER, QUINN & SHAW PLLC
MARCEL A. QUINN, ESQUIRE
100 FINANCIAL DRIVE, SUITE 100
Kalispell, MT 59904

**Case Info:**

| | |
|---|---|
| **PLAINTIFF:** | DISTRICT COURT |
| WHITEFISH ENERGY HOLDINGS LLC | Court Division: CIVIL |
| -versus- | Court Date: 11/30/2017 Time: 03:00 PM |
| **DEFENDANT:** | County of Flathead, Montana |
| ARC AMERICAN, INC. | Court Case # **DV-17-1189-D** |

**Service Info:**

**Date Received: 11/22/2017 at 05:41 PM**
**Service: I Served ARC AMERICAN, INC. c/o REGISTERED AGENTS INC.**
With: **SUMMONS; COMPLAINT AND DEMAND FOR TRIAL BY JURY; EXHIBITS A-C; APPLICATION FOR PRELIMINARY INJUNCTION; DECLARATION OF ANDREW TECHMANSKI; EXHIBITS A-C; ORDER TO SHOW CAUSE; PRAECIPE**
by leaving with **LAURA HART, RECEPTIONIST - EMPLOYEE OF REGISTERED AGENT COMPANY , AUTHORIZED TO ACCEPT**

**At Business 3030 N. ROCKY POINT DR., STE. 150A, TAMPA, FL 33607**
On **11/27/2017 at 09:16 AM**
**Manner of Service: CORPORATE**
CORPORATE SERVICE: F.S. 48.081 (1)(a)(b)(c)(d), (2) or (3)

**Served Description: (Approx)**

Age: **35**, Sex: **Female**, Race: **White-Caucasian**, Height: **5' 6"**, Weight: **140**, Hair: **Blond** Glasses: **Yes**

I **ANALISA CARABALLO** certify that I am over the age of 18, have no interest in the above action, and I am authorized in the jurisdiction in which this service was made.

Signature of Server:
**ANALISA CARABALLO**
**CPS #16-898167**

**S & W Process Service**
2801 N. FLORIDA AVENUE
Tampa, FL 33602
Our Job # **260884**

SUBSCRIBED AND SWORN to before me this _____ **27** _____ day of **November 2017** , by **ANALISA CARABALLO**, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
NOTARY PUBLIC for the state of Florida

**SHELLI A WATSON**
MY COMMISSION #FF179613
EXPIRES November 30, 2018
(407) 398-0153    FloridaNotaryService.com

| | |
|---|---|
| WHITEFISH ENERGY HOLDINGS LLC, | Cause No. DV-17- 1189 D |
| Plaintiff, | FILED<br>BY_____ DEPUTY |
| vs. | SUMMONS |
| ARC AMERICAN, INC., | DAN WILSON |
| Defendant | |

THE STATE OF MONTANA SENDS GREETINGS TO:

      Arc American, Inc.
      c/o Registered Agents Inc.
      3030 N. Rocky Point Dr., Ste 150A
      Tampa, FL 33607

      YOU ARE HEREBY SUMMONED to answer the Complaint in this action, which is

filed in the office of the Clerk of this Court, a copy of which is herewith served upon you in the

County wherein you reside, and to file your answer and serve a copy thereof upon the Plaintiffs'

Attorney within 21 days after the service of this Summons, exclusive of the day of service; and

in case of your failure to appear or answer, judgment will be taken against you, by default, for

the relief demanded in the Complaint.

      Witness my hand and seal of said Court this 22nd day of November, 2017.

HAMMER, QUINN & SHAW PLLC

Peg Allison,
Clerk of the District Court

Todd A. Hammer
Marcel A. Quinn
P.O. Box 7310
Kalispell, MT 59904-0310
(406) 755-2225

Rachael R. Woods
Deputy Clerk

7

# AFFIDAVIT OF PROCESS SERVER

**Client Info:**

HAMMER, QUINN & SHAW PLLC
MARCEL A. QUINN, ESQUIRE
100 FINANCIAL DRIVE, SUITE 100
Kalispell, MT 59904

**Case Info:**

| | |
|---|---|
| **PLAINTIFF:** | DISTRICT COURT |
| WHITEFISH ENERGY HOLDINGS LLC | Court Division: CIVIL |
| -versus- | Court Date: 11/30/2017  Time: 03:00 PM |
| **DEFENDANT:** | County of Flathead, Montana |
| ARC AMERICAN,INC. | Court Case # **DV-17-1189-D** |

**Service Info:**

**Date Received: 11/22/2017 at 05:41 PM**
**Service:** I Served **ARC AMERICAN, INC.** c/o REGISTERED AGENTS INC.
With: **SUMMONS; COMPLAINT AND DEMAND FOR TRIAL BY JURY; EXHIBITS A-C; APPLICATION FOR PRELIMINARY INJUNCTION; DECLARATION OF ANDREW TECHMANSKI; EXHIBITS A-C; ORDER TO SHOW CAUSE; PRAECIPE**
by leaving with **LAURA HART, RECEPTIONIST - EMPLOYEE OF REGISTERED AGENT COMPANY , AUTHORIZED TO ACCEPT**

**At Business 3030 N. ROCKY POINT DR., STE. 150A, TAMPA, FL 33607**
On **11/27/2017 at 09:16 AM**
**Manner of Service: CORPORATE**
CORPORATE SERVICE: F.S. 48.081 (1)(a)(b)(c)(d), (2) or (3)

**Served Description: (Approx)**

Age: **35**, Sex: **Female**, Race: **White-Caucasian**, Height: **5' 6"**, Weight: **140**, Hair: **Blond** Glasses: **Yes**

I **ANALISA CARABALLO** certify that I am over the age of 18, have no interest in the above action, and I am authorized in the jurisdiction in which this service was made.

Signature of Server:
**ANALISA CARABALLO**
CPS #16-898167

**S & W Process Service**
2801 N. FLORIDA AVENUE
Tampa, FL 33602
Our Job # **260884**

SUBSCRIBED AND SWORN to before me this ____27____ day of __November 2017__, by **ANALISA CARABALLO**, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
NOTARY PUBLIC for the state of Florida

SHELLI A WATSON
MY COMMISSION #FF179613
EXPIRES November 30, 2018
(407) 398-0153   FloridaNotaryService.com

Todd A. Hammer
Marcel A. Quinn
HAMMER, QUINN & SHAW PLLC
100 Financial Drive, Suite 100
P.O. Box 7310
Kalispell, MT 59904-0310
Telephone:    (406) 755-2225
Facsimile:    (406) 755-5155
toddhammer@attorneysmontana.com
marcelquinn@attorneysmontana.com
Attorneys for Plaintiff

2017 NOV 27  PM 3: 51

FILED

BY_____
DEPUTY

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| WHITEFISH ENERGY HOLDINGS LLC,<br><br>       Plaintiff,<br><br> vs.<br><br>ARC AMERICAN INC.,<br><br>       Defendant | Cause No. DV-17-1189D<br><br>MOTION FOR PARTICIPATION BY VIDEOCONFERENCE |

COMES NOW Plaintiff Whitefish Energy Holdings LLC, pursuant to Rule 43(a) M.R.Civ.P, and hereby moves the Court for an Order allowing witnesses to appear by videoconference at the show cause hearing scheduled for Wednesday, November 29, 2017.

Good cause exists to allow testimony by videoconference.  Both Whitefish Energy Holdings LLC ("Whitefish Energy") and Arc American, Inc. ("Arc") are contractors currently performing electrical grid reconstruction work in Puerto Rico.  Witnesses to be presented by Whitefish Energy, including Andrew Techmanski, are currently located in Puerto Rico. Whitefish Energy's contract with the Puerto Rico Electric Power Authority concludes on November 30, 2017, with critical work being performed by the parties on a daily basis.  It is, therefore, important for Whitefish Energy personnel to be physically present in Puerto Rico at this time.  Additionally, as a result of damage to infrastructure caused by hurricane Maria, travel

to and from Puerto Rico is exceptionally difficult and expensive. Accordingly, Whitefish Energy

respectfully requests the Court to grant both parties the ability to present witnesses by

videoconference, through the court's Polycom RealPresence application platform.

Inquiry was made of Arc's counsel as to whether Arc opposes the present motion. The

undersigned was not provided a response. A proposed order is provided herewith.

Dated this 27th day of November, 2017.

HAMMER, QUINN & SHAW PLLC

Todd A. Hammer
Marcel A. Quinn
P.O. Box 7310
Kalispell, MT 59904-0310
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Marcel Quinn, hereby certify that on the 27th day of November, 2017, a true and
accurate copy of the foregoing was duly served upon the following counsel of record as indicated
below, either in person or at the address set forth below:

*Courtesy Copy to:*

George A. Spadoro
Chiesa Shahinian & Giantomasi, PC
One Boland Drive
West Orange, NJ 07052

gspadoro@csglaw.com

[ ] U.S. Mail, first class postage prepaid
[ ] Overnight Mail
[ ] Hand Delivery
[ ] Facsimile
[X] E-Mail

Marcel A. Quinn

MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| WHITEFISH ENERGY HOLDINGS LLC, | Cause No. DV-17- 1189 D |
| Plaintiff, | ORDER TO SHOW CAUSE |
| vs. | HEARING |
| ARC AMERICAN, INC., | |
| Defendant | |

A hearing on Plaintiff's Application for Preliminary Injunction against Defendant ARC

American Inc., to show cause as to why a preliminary injunction should not be granted is hereby

set for November 29, 2017, at 3℃ p.m. before the Honorable **DAN WILSON**

in a Courtroom on the third floor of the Flathead County Justice Center. Said hearing is expected

to last approximately 1 hour.

Dated this 22 day of November, 2017.

**DAN WILSON**
_____
District Judge

Todd A. Hammer
Marcel A. Quinn
HAMMER, QUINN & SHAW PLLC
100 Financial Drive, Suite 100
P.O. Box 7310
Kalispell, MT 59904-0310
Telephone:    (406) 755-2225
Facsimile:    (406) 755-5155
toddhammer@attorneysmontana.com
marcelquinn@attorneysmontana.com
Attorneys for Plaintiff

2017 NOV 22  PM 12: 35

FILED

BY_____
        DEPUTY

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| WHITEFISH ENERGY HOLDINGS LLC,<br><br>Plaintiff, | Cause No. DV-17- 1189 D |
|---|---|
| vs.<br><br>ARC AMERICAN INC.,<br><br>Defendant | DECLARATION OF<br>ANDREW TECHMANSKI |

Pursuant to Section 1-6-105, MCA the following declaration, submitted by Andrew

Techmanski, has the same force and effect as a sworn written affidavit.

Andrew Techmanski declares as follows:

1.    I am an owner and principal of Whitefish Energy Holdings LLC, with personal

knowledge of the matters stated herein.

2.    Whitefish Energy Holdings LLC (hereinafter "Whitefish Energy") is a Montana

limited liability company with its principal place of business in Flathead County, Montana.

3.    Whitefish Energy entered into a contract with the Puerto Rico Electric Power

Authority ("PREPA") for electrical grid reconstruction after hurricane Maria.

4. On or about September 30, 2017, Whitefish Energy entered into a subcontract with Arc American, Inc. (hereinafter "Arc"). A true and accurate copy of the subcontract, excluding exhibits, is attached hereto as Exhibit A.

5. Whitefish Energy has timely paid all subcontractors, including Arc, for subcontractor services for which Whitefish Energy has received payment from PREPA.

6. There are outstanding invoices for work issued by Arc to Whitefish Energy for which Whitefish Energy has not received payment from PREPA.

7. Without prior notice to Whitefish Energy, Arc sent a letter dated November 16, 2017, directly to PREPA. A true and accurate copy of the letter is attached hereto as Exhibit B.

8. Whitefish Energy has not been paid by PREPA for any of the $8,736,054.03 claimed by Arc in its November 16, 2017 letter to be due and owing.

9. Whitefish Energy has been advised by PREPA, as a result of the letter and Arc's claim for payment, PREPA must withhold from Whitefish Energy the amount of payment claimed.

10. On or about September 30, 2017, Whitefish Energy and Arc entered into a Non-Compete Agreement. A true and accurate copy of the Non-Complete Agreement is attached hereto as Exhibit C.

11. Arc's conduct, including its November 16, 2017 letter, is substantially and irreparably interfering with Whitefish Energy's relationship with PREPA, and has caused PREPA to withhold payment from Whitefish Energy, which only exacerbates the payment issues for Whitefish Energy, and all of its subcontractors, including Arc itself.

12.     PREPA's withholding of payment due to Arc's letter has caused and contributed to Whitefish Energy being forced to suspend operations in Puerto Rico due to the lack of payment.

13.     Given Whitefish Holding's contract with PREPA concludes on November 30, 2017 and Whitefish Holding has critical work it needs to complete for PREPA by that date, the non-payment of amounts due and cessation of work is and will cause great and irreparable injury to Whitefish Energy.

14.     Despite Whitefish Energy's repeated requests to Arc to withdraw its letter to PREPA, Arc has refused to do so.

15.     Whitefish Energy is agreeable to PREPA paying Arc directly for any unpaid, approved invoices, contemporaneously with the payment of the balance of approved invoices to Whitefish Energy. Arc, however, refuses to cooperate in this regard.

16.     To withdraw the November 16, 2017 letter, Arc demands Whitefish Energy authorize PREPA to pay Arc more than it is currently due under the Subcontract, release Arc from a Non-Compete Agreement, and release all legal rights and obligations under the entire subcontract. Whitefish Energy cannot agree to such demands.

17.     Whitefish Energy has in good faith attempted to resolve the current dispute without the need for court involvement.

I declare under penalty of perjury and under the laws of the state of Montana that the foregoing is true and correct.

Dated this 22nd day of November, 2017
San Juan, Puerto Rico

_Andrew Techmanski_
Andrew Techmanski

This Agreement is made this_____30 day of September_____, 2017__, by and between the
(Day)                                                    (Month)                         (Year)

**CONTRACTOR:** Whitefish Energy Holdings, LLC, 144 Aspen Ridge Way, Whitefish, MT 59937_____and
                    (Name and Address)

**SUBCONTRACTOR:Arc American, Inc.** _____.
                        (Name and Address)

**SUBCONTRACTOR LICENSE NUMBER:** _____

**PROJECT: Puerto Rico Hurricane Restoration**_____.
                (Description of Project and Location)

**OWNER:**Puerto Rico Electric Power Authority_____.
                (Name and Address)

**ARCHITECT/ENGINEER:**NA_____.
                (Name and Address)

1. **SUBCONTRACT WORK**: To the extent terms of the agreement between Owner and Contractor (prime agreement)
   apply to the work of Subcontractor, Contractor assumes toward Subcontractor all obligations, rights, duties,
   and redress that Owner assumes toward Contractor. In an identical way, Subcontractor assumes toward
   Contractor all obligations, rights, duties, and redress that Contractor assumes toward Owner and others under the
   prime agreement (copy of prime contract available upon request). In the event of conflicts or inconsistencies
   between provisions of this Agreement and the prime agreement, this Agreement shall govern. Subcontractor
   shall perform Subcontract Work under the general direction of Contractor and shall cooperate with Contractor so
   Contractor may fulfill obligations to Owner shall be responsible for all permits, fees, licenses, assessments,
   inspections, testing, and taxes necessary to complete Subcontract Work. Subcontractor agrees not to charge
   Contractor any additional cost on account of incidental discrepancies that might appear in the plans and
   specifications. Subcontractor represents to the best of its knowledge after careful review that the plans are
   currently complete and sufficient to provide project with substantially complete and functional systems.
   Subcontractor represents and affirms that it is fully licensed in accordance with all local, state and federal
   requirements to do the work set forth in the Agreement. Subcontractor to provide:

Cost Plus Storm Restoration _____, as
                                    (Brief Description of Subcontract Work)
more fully described in Exhibit A.

2. **SUBCONTRACT AMOUNT**: Contractor agrees to pay Subcontractor for satisfactory and timely performance and
   completion of Subcontract Work: Cost Plus TBD_____;
   ($_____.00).

3. **INSURANCE**: Subcontractor shall purchase and maintain insurance that will protect Subcontractor from claims
   arising out of Subcontractor operations under this Agreement, whether the operations are by Subcontractor, or any
   of the Subcontractor's consultants or subcontractor or anyone directly or indirectly employed by any of them,
   or by anyone for whose acts any of them may be liable. Subcontractor shall maintain coverage and limits of liability
   as set forth in Exhibit D, and submit to Contractor a valid certificate of insurance, listing Contractor as additional
   Insured.

4. **BONDS:** Subcontractor ☐ shall ☑ NONE shall not furnish to Contractor, as Obligee, surety bonds in a form
   as set forth in Exhibit G to this Agreement, and through a surety mutually agreeable to Contractor and
   Subcontractor, to secure faithful performance of Subcontract Work and to satisfy Subcontractor payment
   obligations related to Subcontract Work.

**EXHIBIT**

*A*

**5. EXHIBITS**: The following Exhibits are incorporated by reference and made part of this Agreement:

EXHIBIT "A": Scope of Work, including Clarifications, Allowances, Exclusions, Alternates and Unit Prices, ___pages.
EXHIBIT "B": Project Drawings, Specifications, General, Special, Supplementary, and other conditions, and addenda,___ pages.
EXHIBIT "C": Progress Schedule,_____pages.
EXHIBIT "D": Insurance Provisions,___ pages.
EXHIBIT "E": Warranty Forms (Subcontractor and Lower Tier Subcontractors)
EXHIBIT "F": Schedule of Values and Application for Payment Forms, ___pages.
EXHIBIT "G": Bonds, ___pages.
EXHIBIT "H": Listing of all Subcontractor's sub-subcontractors, equipment, labor or material suppliers, ___pages.
EXHIBIT "I": Non-Compete Agreement, 4 pages.

**6. SAFETY**: To protect persons and property, Subcontractor shall establish a safety program implementing safety measures, policies and standards conforming to (1) those required or recommended by governmental or quasi-governmental authorities having jurisdiction, and (2) requirements of this Agreement.

**7. ASSIGNMENT**: Subcontractor shall not assign the whole or any part of Subcontract Work or this Agreement without prior written approval of Contractor.

**8. TIME**

**8.1 TIME IS OF THE ESSENCE**: Time is of the essence for both parties. The parties agree to perform their respective obligations so that the Project may be completed in accordance with this Agreement.

**8.2 SCHEDULE**: The Contractor shall prepare the schedule for performance of Contractor's work (Progress Schedule) and shall revise and update such schedule as necessary, as Contractor's work progresses. Subcontractor shall provide Contractor with any scheduling information proposed Subcontractor for Subcontract Work and shall revise and update as Project progresses. Contractor and Subcontractor shall be bound by the Progress Schedule. The Progress Schedule and all subsequent changes and additional details shall be submitted to Subcontractor reasonably in advance of required performance. Contractor shall have the right to determine and if necessary, change the time, order, and priority in which various portions of Subcontract Work shall be performed and all other matters relative to Subcontract Work.

**9. CHANGE ORDERS**: When Contractor orders in writing, Subcontractor, without nullifying this Agreement, shall make any and all changes in Subcontract Work, which are within the general scope of this Agreement. Any adjustment in the Subcontractor Amount time of performance shall be authorized by Change Order. No Adjustments shall be made for any changes performed by Subcontractor that have not been ordered by Contractor. A Change Order is a written instrument prepared by Contractor and signed by Subcontractor stating their agreement upon the change in Subcontract Work. If Commencement and/or progress of Subcontract Work is delayed without the fault or responsibility Subcontractor, the time for Subcontract Work shall be extended by Change Order to the extent obtained by Contractor, and the Progress Schedule shall be revised accordingly.

In the event Contractor and Subcontractor cannot reach an agreement as to the value of the additional work, Contractor may direct Subcontractor to perform such work, compensating Subcontractor for all its direct labor, materials, equipment plus 15% for overhead and profit as full compensation for additional work.

**10. PAYMENT**

**10.1 SCHEDULE OF VALUES**: As a condition of payment, Subcontractor shall provide a schedule of values satisfactory to Contractor not more than fifteen (15) days from the date of this Agreement, and it shall include the name of all sub-subcontractors, rental companies and materialmen along with their associated cost (see Exhibit "H"). Not Applicable to this contract.

**10.2 PROGRESS AND FINAL PAYMENTS**: Receipt of payment by Contractor from Owner for Subcontract Work is a condition precedent to payment by Contractor to Subcontractor. Subcontractor acknowledges that it relies on credit of Owner, not Contractor, for payment of Subcontract Work. Progress payments, shall be made to Subcontractor, for Subcontract Work satisfactorily performed, no later than seven (7) days after receipt by Contractor of payment from Owner for Subcontract Work. Final payment of the balance due shall be made to Subcontractor no

later than seven (7) days after receipt by Contractor of final payment from Owner for Subcontractor Work. These payments are subject to receipt of such lien waivers, affidavits, warranties, guarantees or other documentation required by this Agreement or Contractor. Subcontractor shall issue a fee of 1% per month past the agreed payment schedule above, if payment is not made within agreed terms.

**10.3 PAYMENTS WITHHELD**: Contractor may reject a Subcontractor payment application or nullify a previously approved Subcontractor payment application, in whole or in part, as may reasonably be necessary to protect Contractor from loss or damage caused by Subcontractor's failure to (1) timely perform Subcontract Work, (2) properly pay subcontractors and/or suppliers, or (3) promptly correct rejected, defective or nonconforming Subcontract Work.

**10.4 PAYMENTS WITHHELD**: Contractor has received payment from Owner and, if for any reason not the fault of Subcontractor. Subcontractor does not receive a progress payment from Contractor within seven (7) days after the date such payment is due, Subcontractor, upon giving seven (7) days' written notice to Contractor, and without Prejudice to and in addition to any other legal remedies, may stop work until payment of the full amount owing to Subcontractor has been received. Subcontract Amount and time of performance shall be adjusted by the amount of Subcontractor's reasonable and verified cost of shutdown, delay and startup, and shall be affected by an appropriate Change Order.

**10.5 WAIVER OF CLAIMS**: Final Payment shall Constitute a waiver of all claims by Subcontractor relating to Subcontract Work, but shall in no way relieved Subcontractor of liability for warranties, or for nonconforming or defective work discovered after final payment.

**10.6 OWNER'S ABILITY TO PAY:**

**10.6.1** Subcontractor shall have the right upon request to receive from Contractor such information as Contractor has obtained relative to Owner's financial ability to pay for Contractor's work, including any subsequent material variation in such information, Contractor, however, does not warrant the accuracy or completeness of information provided by Owner.

**10.6.2** If Subcontractor does not receive the information referenced Subparagraph 10.6.1, Subcontractor may request the information from Owner and/or Owner's lender.

**11. INDEMNITY:** To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless Contractor, Contractor's other subcontractors, Architect/Engineer, Owner and their agents, consultants, employees and others as required by this Agreement from all claims for bodily injury and property damage that may arise from performance of Subcontract Work to the extent of the negligence attributed to such acts or omissions by Subcontractor, Subcontractors or anyone employed directly or indirectly by any of the or by anyone for whose acts any of them may be liable.

**12. NON-COMPETE:** Subcontractor shall execute and become bound by a Non-Compete Agreement, which shall be in the form attached hereto as Exhibit I and by this reference incorporated herein.

**13. CONTRACTOR'S RIGHT TO PERFORM SUBCONTRACTOR'S RESPONSIBILITIES AND TERMINATION OF AGREEMENT:**

**13.1 FAILURE OF PERFORMANCE:** Should Subcontractor fail to satisfy contractual deficiencies or to commence and continue satisfactory correction of the default with diligence or promptness within three (3) working days from receipt of Contractor's written notice, then Contractor, without prejudice to any right or remedies, shall have the right to take whatever steps it deems necessary to correct deficiencies and change the cost thereof to Subcontractor, who shall be liable for such payment, including reasonable overhead, profit and attorneys' fees. In the event of an emergency affecting safety of persons or property, Contractor may proceed as above without notice, but Contractor shall give Subcontractor notice promptly after the fact as a precondition of cost recovery.

**13.2 TERMINATION BY CONTRACTOR:** If Subcontractor fails to commence and satisfactorily continue correction of a default within three (3) days after written notification issued under Paragraph 12.1, then Contractor may, in lieu of or in addition to Paragraph 12.1, issue a second written notification, to Subcontractor and its surety, if any. Such notice shall state that if Subcontractor fails to commence and continue correction of a default within seven (7) days of the written notification, the Agreement will be deemed terminated. A written notice of termination shall

be issued by Contractor to Subcontractor at the time Subcontractor is terminated. Contractor may furnish those materials, equipment and/or employ such workers or subcontractors as Contract deems necessary to maintain the orderly progress of Contractor's Work. All costs incurred by Contractor in performing Subcontractor Work, including reasonable overhead, profit and attorney's fees, cost and expenses, shall be deducted from any monies due or to become due Subcontractor. Subcontractor shall be liable for payment of any amount by which such expense may exceed the unpaid balance of the Subcontractor Amount. At Subcontractor's request, Contractor shall provide a detailed accounting of the costs to finish Subcontract work.

**13.3 TERMINATION BY OWNER:** Should Owner terminate the prime agreement or any part which includes Subcontract Work, Contractor shall notify Subcontractor in writing within three (3) days of termination and, upon written notification, this agreement shall be terminated and Subcontractor shall immediately stop Subcontract Work, follow all of Contractor's instructions, and mitigate all costs. In the event of Owner termination, Contractor liability to Subcontractor shall be limited to the extent of Contractor recovery on Subcontractor's behalf under the prime agreement. Contractor agrees to cooperate with Subcontractor, at Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of Owner termination and to permit Subcontractor to prosecute the claim, in the name of Contractor, for the use and benefit of Subcontractor, or assign the claim to Subcontractor.

**13.4 TERMINATION BY SUBCONTRACTOR:** If Subcontractor Work has been stopped for thirty (30) days because Subcontractor has not received progress payments or has been abandoned or suspended for an unreasonable period of time not due to the fault or neglect of Subcontractor, then Subcontractor may terminate this Agreement upon giving Contractor seven (7) day's written notice. Upon such termination, Subcontractor shall be entitled to recover from Contractor payment for all Subcontract Work satisfactorily performed but yet paid for, including reasonable overhead, profit and attorneys' fees, costs and expenses, subject to the terms of Paragraphs
10.2 and 10.3 Contractor's liability for any other damages claimed by Subcontractor under such circumstances shall be extinguished by Contractor pursuing said damages and claims against Owner, on Subcontractor's behalf, in the manner provided for in Paragraph 12.3 of this Agreement.

## 14 CLAIMS AND DISPUTES:

**14.1 CLAIMS RELATING TO CONTRACTOR:** Subcontractor shall give Contractor written notice of all claims within seven (7) days of Subcontractor's knowledge of facts giving rise to the event for which claim is made; otherwise, such claims shall be deemed waived. All unresolved claims, disputes and other matters in question between Contractor and Subcontractor shall be resolved in the manner provided in this Agreement.

**14.2 DAMAGES:** If the prime agreement provides for liquidated or other damages for delay beyond the completion date set forth in this Agreement, and such damages are assessed, Contractor may asses a share of the damages against Subcontractor in proportion Subcontractor's share of responsibility for the delay. However, the amount of such assessment shall not exceed the am ount assessed against Contractor. Nothing in this Agreement shall be construed to limit Subcontractor's liability to Contractor for Contractor's actual delay damages caused by Subcontractor's delay.

**14.2.1 CONTRACTOR CAUSED DELAY:** Nothing in this Agreement shall preclude Subcontractor's recovery of delay damages caused by Contractor.

**14.3 WORK CONTINUATION AND PAYMENT:** Unless otherwise agreed in writing. Subcontractor shall continue Subcontract Work and maintain the Progress Schedule during any dispute resolution proceedings. If Subcontractor continues to perform, Contractor shall continue to make payments in accordance with this Agreement.

**14.4 MULTIPARTY PROCEEDING:** The parties agree, to the extent permitted by the prime agreement, that all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding. To the extent disputes between Contractor and Subcontractor involve in whole or in part disputes between Contractor and Owner, disputes between Subcontractor and Contractor shall be decided by the same tribunal and in the same forum as disputes between Contractor and Owner.

**14.5 NO LIMITATION OF RIGHTS OR REMEDIES:** Nothing in Article 13 shall limit any rights or remedies not expressly waived by Subcontractor which Subcontractor may have under lien laws or payment bonds.

**14.6 STAY OF PROCEEDINGS:** In the event that provisions for resolution of disputes between Contractor and Owner contained in the prime agreement do not permit consolidation or joinder with disputes of third parties, such

as Subcontractor, resolution of disputes between Subcontractor and Contractor involving in whole or in part disputes between Contractor and Owner shall be stayed pending conclusion of any dispute resolution proceeding between Contractor and Owner.

**14.7 DIRECT DISCUSSION:** If a dispute arises out of or relates to this Agreement, the parties shall endeavor to settle the dispute through direct discussion.

**14.8 MEDIATION:** Disputes between Subcontractor and Contractor not resolved by direct discussion shall be submitted to mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association. The parties shall select the mediator within fifteen (15) days of the request for mediation. Engaging in mediation is a condition precedent to any form of binding dispute resolution.

**14.9 ARBITRATION:** Any controversy arising out of the performance or non-performance of the work required by any Subcontract or any sub-subcontract, or the interpretation thereof, is subject to arbitration, and judgment may be entered on the award. All sub-subcontractors and material suppliers to Subcontractor are bound by this arbitration provision. Arbitration shall be in accordance with the arbitration provision contained in the contract between the Contractor and the Owner, when there is such an arbitration provision. Upon the demand of any party, any other party subject to this arbitration agreement shall join in and become a party to and be bound by such arbitration proceedings. If, because of the objections of other parties, or because of the structure of the arbitration clause in the agreement between Contractor and Owner, it is not possible for Subcontractor, or its subcontractors or suppliers, to become parties to the arbitration proceedings, and if Subcontractor's work or performance becomes an issue in arbitration proceedings between Contractor and Owner, then Subcontractor will, at its own expense, supply counsel, evidence, and witnesses to establish Subcontractor's performance of its obligations to Contractor under this Subcontract. Subcontractor will be bound to Contractor by award. If there is no arbitration clause in the contract between Contractor and Owner, then arbitration shall be in accordance with the Construction Industry Rules of the American Arbitration Association. Should any party refuse or neglect to appear at, or participate in, arbitration proceedings after due notice, the arbitrator will decide the controversy in accordance with evidence introduced the party or parties who did appear. The arbitrator will award reasonable attorney's fees to the prevailing party. Rescission of the Subcontract shall not impair this arbitration agreement.

**14.10     COST OF DISPUTE RESOLUTION:** The cost of any mediation proceeding shall be shared equally by the parties participating. The prevailing party in any dispute that goes beyond mediation arising out of or relating to this Agreement or its breach shall be entitled to recover from the other party reasonable attorneys' fees, cost and expenses incurred by the prevailing party in connection with such dispute.

**14.11     BACKCHARGES:** Subcontractor will promptly pay Contractor for any damage or loss that Contractor may sustain as a result of Subcontractor's performance or failure of performance.

**15 WARRANTY:** The Subcontractor warrants its work and material against defects. All work and materials will be as called for in the Contract Documents. If the Contract between Contractor and Owner contains warranty provisions, Subcontractor shall comply with those provisions at no expense to Owner or Contractor. If no warranty is provided in the Contract between Contractor and Owner, or in the Contract between Contractor and Subcontractor, then the Subcontractor shall guarantee its work for one year after completion of the project, and promptly upon notice from Owner or Contractor, shall repair defective work.

**16 CONCEALED CONDITIONS:** By executing this Subcontract, Subcontractor represents that it has made a thorough examination of the job site and has located and allowed for all conditions, including concealed conditions that are to be encountered in the performance of the work. Subcontractor has taken such conditions into account in arriving at the Subcontract price. No additional compensation or extension of time shall be allowed because of concealed or unforeseen conditions about the job site.

**17 INVESTIGATION BY SUBCONTRACT:** Subcontractor has carefully examined and understands this Subcontract and the other contract documents, and has investigated the nature, locality and site of the work and the conditions and difficulties under which it is to be performed. Subcontractor enters into this agreement on the basis of its own examination, investigation and evaluation of all such matters, and not in reliance on the opinions or representations of Contractor and/or Owner. If there are any inconsistencies between the contract documents, or ambiguities in any contract document, Subcontractor shall bring such inconsistencies or ambiguities to the attention of Contractor before the execution of the Subcontract; otherwise, Subcontractor shall be bound by Contractor's resolution of such inconsistencies or ambiguities.

**18 SUPERVISION:** Subcontractor shall maintain a competent, experienced English-speaking superintendent or foreman on the project at all times, with authority to carry out directives of the Contractor relating to the Subcontractor's work and responsibilities.

**19 PUNCH LIST:** At the conclusion of construction, a "punch list" which requires correction or completion may be given to Subcontractor. Subcontractor agrees to complete such "punch list" within seven (7) days of receipt. Subcontractor's failure to correct said items within said seven (7) day period shall give the Contractor the right, but not the obligation, to complete or correct said items without further notice to Subcontractor, and to charge the cost thereof to Subcontractor.

**20 CLEANUP:** Subcontractor will continuously clean the job site, and Subcontractor's work areas will be maintained in an orderly and broom-clean condition at all times. Subcontractor will locate its materials and equipment so as to avoid interference with other trades. If Subcontractor fails to perform as required by this paragraph, Contractor may do so at Subcontractor's expense.

**21 DESTRUCTION OR DAMAGE OF THE WORK:** Subcontractor will carry its own insurance to protect against destruction of, or damage to, the Subcontractor's work, including stored materials not yet incorporated in the work. Subcontractor will be responsible for its work until completion of the entire project and its acceptance by the Owner. Until that time, Subcontractor has the risk of damage or loss. In event of damage to or destruction of the work, Subcontractor will rebuild its portion of the work without additional compensation, and will look to its own resources or insurance coverage to pay for such rebuilding. Subcontractor will promptly perform rebuilding without additional compensation regardless of the pendency of any claim by Subcontractor against any other party, including Contractor, that such party is liable for damage to or destruction of Subcontractor's work.

**22 QUALITY OF THE WORK:** All materials and equipment shall be as specified and all work shall be performed by Subcontractor in a first-class and workmanlike manner.

**23 Governing Law/Venue.** This Agreement shall be governed and construed in accordance with the laws of the state of Montana. Each of the parties consents to venue in Flathead County, Montana.

CONTRACTOR: **Whitefish Energy Holdings, LLC.**

BY: _(signature)_

PRINT NAME: Andy Techmanski

SUBCONTRACTOR:

BY: _(signature)_

(Signature must be by company owner or officer authorized to sign contracts and change orders.)

PRINT NAME: Ben Wilson    9/30/17
*President*

BW



## ARC AMERICAN INC.

**11/16/2017**

**BY HAND AND BY CERTIFIED MAIL**

Mr. Ricardo Ramos
Executive Director
Puerto Rico Electric Power Authority
Edificio NEOS
Ave. Ponce de León, Parada 16 ½
Santurce, PR

**FOR INFORMATIONAL PURPOSES ONLY**

**Re:    Notice of Moneys Owed Subcontractor by
          Whitefish Energy Holdings LLC**

Dear Mr. Ramos:

Our firm Arc American, Inc. ("Arc") is a subcontractor pursuant to a written subcontract executed between Arc and Whitefish Energy Holdings, LLC ("Whitefish") on or about September 30, 2017 for a project regarding Puerto Rico Hurricane Restoration (the "Subcontract"). The Subcontract was executed in connection with an Emergency Master Service Agreement for PREPA's Electrical Grid Reconstruction following Hurricane Maria, executed between Whitefish, as Contractor, and PREPA, as Owner, on or about September 26, 2017 and amended on October 17, 2017 and October 27, 2017 ("the Prime Contract").

Arc, a long-established firm with experience in work required by the Prime Contract, played no role in the negotiation or preparation of the Prime Contract, including the establishment of the rates set forth in the Prime Contract. The rates, charges, fees and costs charged by Arc to Whitefish under the Subcontract are well within industry standards for a job of this nature.

On or about November 9, 2017, Whitefish notified Arc that Whitefish received a notice dated October 31, 2017 from PREPA terminating the Prime Contract effective as of November 30, 2017. In its notice to Arc, Whitefish further advised Arc that pursuant to Section 13.3 of the Subcontract, Whitefish terminates the Subcontract effective as of November 30, 2017 (the "Notice of Termination"). A copy of the Notice of Termination is annexed hereto as Exhibit A.

Arc American, Inc. | P.O. Box 599 | Wakarusa, IN 46573 | 574-238-6115 | www.arcameri...

1

**EXHIBIT**

*B*

This is to inform PREPA that Whitefish has failed to pay monies due and owing Arc under the Subcontract in an amount exceeding $8,736,054.73, for labor, materials and services furnished by Arc and costs incurred by Arc for PREPA's benefit in connection with the Subcontract. Copies of unpaid invoices together with a partially paid invoice from Arc to Whitefish are annexed hereto as Exhibit B. Arc anticipates that if it is required to cease all work, it may sustain additional costs in connection with the Subcontract, including, but not limited to monies to be due and owing by Whitefish for additional work under the Subcontract, together with costs incurred by Arc in connection with the termination of the Subcontract, including, but not limited to, demobilization costs. Similarly, Arc will likely incur additional costs if, subsequent to its termination, it must reactivate its work force to complete the Subcontract at some later date.

It is Arc's desire to assist PREPA in managing this situation so as to protect its interests and mitigate any damages that may be sustained by any affected parties. Arc is aware of PREPA's emergency and of the urgent need for continuation of the work and prompt reconstruction of PREPA's power grid, for the benefit of the people of Puerto Rico. We have been working very hard from the beginning of our job under the Subcontract to assist PREPA, and are willing to continue doing so.

Arc hereby informs PREPA, pursuant to Article 1489 of the Puerto Rico Civil Code, that at this time there are moneys due and payable to Arc by Whitefish in the sum of at least $8,736,054.73 for work performed by Arc for PREPA's benefit. We request that PREPA assist us, to the extent possible, to insure that Arc is being paid by Whitefish in connection with any moneys due by PREPA to Whitefish under the Prime Contract. Arc therefore requests that PREPA forbear from paying to Whitefish the current amount owed by Whitefish to Arc - - $8,736,054.73 - - and instead pay those moneys directly to, or hold them in escrow for, Arc, at least until PREPA has been satisfied that Arc has been paid in full any moneys owed it by Whitefish.

Given the urgency of this matter and the need by all parties to avoid and mitigate damages, we request that a meeting be scheduled at your earliest convenience to clarify and attend to this matter. We hope you can assist us in resolving this matter expeditiously and uneventfully, and look forward to assist PREPA and the people of Puerto Rico in any manner PREPA may deem convenient.

This letter does not constitute at this time, and is not intended to be, the exercise of a right against PREPA, or notice of a claim to be asserted against PREPA, or the exercise of a right to an equitable remedy for breach of PREPA's performance, but merely a notice to PREPA for informational purposes only so that PREPA will be aware of the moneys owed Arc by Whitefish, and may proceed accordingly. This notice is without prejudice to or waiver of Arc's rights, all rights being expressly reserved.

I may be reached at 574-238-6115 or you can have PREPA counsel contact my counsel, George Spadoro of CSG Law at (973) 530-2113 or via cell phone at (908) 794-1000 to schedule the meeting requested or in the interim to answer any questions.

Yours truly,

Ben Wilson
President
Arc American, Inc.

ccc:  Mireya Rodriguez Fernandez, PREPA Principal Supervising Engineer
      Lcda. Astrid Rodríguez, PREPA General Counsel
      Lcdo. Alfonso Orona Amilivia, PREPA Coordinator, Office of the Governor

## NON-COMPETE AGREEMENT

IN CONSIDERATION of entering into the Subcontract Agreement between Whitefish Energy Holdings, LLC ("Contractor") and __Arc American Inc.__
("Subcontractor"), and pursuant to said Subcontract Agreement and the Exhibits thereto executed by Contractor and Subcontractor effective __9/30/17__ (collectively, the "Agreement"), the parties hereby enter into this Non-Compete Agreement (the "Non-Compete") and agree as follows:

**1.** **Contractor Agreement/Consideration.** Subcontractor does hereby acknowledge and agree that Contractor entering into the Agreement and in accordance with the Agreement shall in and of itself constitute timely and legally sufficient consideration to bind Subcontractor to this Non-Compete without any additional consideration.

**2.** **Non-Disclosure; Non-Solicitation; Non-Compete.**

a. Non-Disclosure. Subcontractor acknowledges and agrees that the protection of Confidential Information (as hereinafter defined) is necessary to protect and preserve the value of Contractor's Business and Assets, and, therefore, Subcontractor hereby agrees, except to the extent allowed pursuant Section 5 below, not to disclose to any unauthorized person or entity for Subcontractor's own account or for the benefit of any third party any Confidential Information, whether or not such information is embodied in writing or other physical form or is retained in the memory of the Subcontractor, without Contractor's prior written consent, unless and to the extent that the Confidential Information is or becomes generally known to and available for use by the public other than as a result of Subcontractor's fault or the fault of any other person or entity bound by a duty of confidentiality to Contractor. Upon request by Contractor, and in any event upon termination of the Agreement for any reason, Subcontractor shall promptly deliver to Contractor all property belonging to Contractor including, without limitation, all Confidential Information in Subcontractor's control or possession. As used herein, the term Confidential Information means (i) any and all trade secrets concerning the Business and affairs of Contractor, product specifications, data, agreements, documents, reports, records, manufacturing methods, know-how, formulae, compositions, processes, proprietary ideas, patentable ideas, copyrights, designs, sketches, photographs, graphs, drawings and CAD/CAM models (including digital), samples, inventions and ideas, past, current and planned research and development, current and planned treatment and collection methods and processes, current or planned products or services, customer lists, current and anticipated customer requirements, price lists, market studies, business plans, computer software and programs (including object code and source code), schematics, database technologies, systems, structures architectures processes, improvements, devices, know-how, discoveries, concepts, methods, and other related information of Contractor and any other information, however documented, of Contractor that is a trade secret under any applicable federal or state law; (ii) any and all information concerning the business and affairs of Contractor, including historical financial statements, financial projections and budgets, historical and projected sales, capital spending budgets and plans, costs, profit and margin information, marketing, agreements, the names and backgrounds of key personnel, contractors, agents, suppliers and potential suppliers, personnel training and techniques and

1



materials, purchasing methods and techniques and technologies however documented; (iii) any and all memoranda, notes, analysis, compilations, studies, summaries and other material prepared by or for Contractor containing or based, in whole or in part, upon any information included in the foregoing; and (iv) any and all information (proprietary or otherwise), trade secrets, client listings, contacts and any information shared or disclosed by the Contractor to Subcontractor in connection with the Agreement. Notwithstanding the provisions of this Section, if Subcontractor is required to disclose any Confidential Information pursuant to any applicable law, rule, or regulation or a subpoena, court order or similar judicial process, Subcontractor shall promptly notify Contractor of any such requirement so that Contractor may seek an appropriate protective order or waive compliance with the provisions of this Non-Compete. If such order is not obtained or Contractor waives compliance with this Non-Compete, Subcontractor shall only disclose that portion of the Confidential Information which Subcontractor is advised by counsel that Subcontractor is legally required to disclose.

b. Non-Solicitation. From the date of execution hereof and up until and including one year after the last scope of work completion, Subcontractor shall not: (i) solicit the business of any person or entity who is Contractor's client or customer for the purpose of providing any services to such person or entity (whether Non-Compete Business, as hereinafter defined, or otherwise); (ii) cause, induce or attempt to cause or induce any client, customer, supplier, licensee, licensor, franchisee, employee, consultant or other business relation of Contractor or its business to cease doing business with Contractor, to deal with any competitor of Contractor or in any way interfere with his, her or its relationship with Contractor; or (iii) hire, retain or attempt to hire or retain any employee of Contractor or in any way interfere with the relationship between Contractor and any of its employees or independent contractors

c. Non-Compete. From the date of execution hereof and up until and including one year after the last scope of work completion, within Puerto Rico, Subcontractor shall not, directly or indirectly, compete for or engage in the business of electrical infrastructure, or sell any products of the nature currently sold by the Contractor (collectively, the "Non-Compete Business"). Subcontractor shall not participate in Non-Compete Business or directly or indirectly invest in, promote, own, manage, operate, finance, control, advise, render services to or guarantee the obligations of any person or entity engaged in Non-Compete Business. This non-compete applies to Subcontractor personally as well as any entity in which Subcontractor has any ownership or other interest therein, including without limitation any partnership, limited liability company, corporation or other business entity; provided, however, that Subcontractor may purchase or otherwise acquire up to (but not more than) five percent (5%) of any class of the securities of any person or entity (but may not otherwise participate in the activities of such person or entity) participating in a Non-Compete Business if such securities are listed on any national or regional securities exchange or have been registered under Section 12(g) of the Exchange Act.

3.    **Compensation.** The obligations set forth in the Agreement shall constitute sufficient consideration for the parties hereto and their respective undertakings in this Non-Compete.

2

**4.    Liquidated Damages/Specific Performance and Injunctive Relief.** In the event Subcontractor's breach this Non-Compete, then Contractor shall be entitled to damages for any business or prospective business lost as a result thereof, and shall be entitled to recover from Subcontractor any and all damages it can reasonably show that it has incurred as a consequence of Subcontractor's breach. Subcontractor acknowledge that the valuation of such lost business is not always susceptible to precise calculation, and agrees that in the event of such breach those liquidated damages which may be recovered by Contractor against Subcontractor personally shall be equal to four (4) times the cost of all business lost by Contractor as a result of Subcontractor's violation of this Non-Compete. In addition to recovery of monetary damages, including liquidated damages, Contractor shall also be entitle to judicially seek specific enforcement of Subcontractor's covenants and obligations provided for herein, and can further seek injunctive relief from the District Court for Flathead County, Montana, barring or preventing Subcontractor from soliciting Customers, diverting Non-Compete Business or otherwise violating this Non-Compete. For purposes of this Non-Compete, the term "Customers" means any means any firm, partnership, corporation and/or any other entity and/or person that purchased or purchases goods or services from the Contractor or Subcontractor.

**5.    Governing Law/Venue.** This Non-Compete shall be governed and construed in accordance with the laws of the state of Montana. Each of the parties consents to venue in Flathead County, Montana.

**6.    Notice.** Any notice required by this Non-Compete shall be personally served or deposited in the United States mail, marked Certified or Registered, return receipt requested, and addressed as follows:

| | |
|---|---|
| To Contractor: | WHITEFISH ENERGY HOLDINGS, LLC<br>144 Aspen Ridge Way<br>Whitefish, MT 59937 |
| To Subcontractor: | Arc American Inc.<br>PO Box 599<br>Wakarusa, IN 46573 |

A party wishing to change its designated address shall do so by notice in writing to the other party. Any notice is deemed received on the date it is personally served or on the date receipt is otherwise acknowledged by signature. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice.

**9.    Defined Terms.** Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Agreement.

**10.    Enforceability.** If a final judgment of a court or tribunal of competent jurisdiction determines that any term or provision contained in this Non-Compete is invalid or unenforceable, then the parties agree that the court or tribunal will have the power to reduce the scope, duration

3



or geographic area of the term or provision, to delete specific words or phrases or to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision.

**11.** **Attorneys Fees**. In any and all action taken to enforce the terms of the Non-Compete and/or resolve a dispute regarding the enforceability of the contract itself, whether at law, in equity, or through alternative dispute resolution, such as arbitration, the prevailing party shall be entitle to recover all its reasonable fees and costs associated with such action, including reasonable attorneys' fees.

**12.** **Waiver**. No failure by a party to insist upon the strict performance of any term or to exercise any right, power or remedy consequent upon a breach thereof, and no acceptance of full or partial performance during the continuance of such breach shall constitute a waiver of any such breach or of any term. No waiver of any breach shall affect or alter this Non-Compete, which shall continue in full force and effect.

DATED AND EXECUTED on this ___30___ day of September 20_17_.

CONTRACTOR: **Whitefish Energy Holdings, LLC.**     SUBCONTRACTOR:

BY: _____     BY: _____
(Signature must be by company owner or officer authorized to sign contracts and change orders.)

PRINT NAME: Andrew Techmanski     PRINT NAME: Ben Wilson

4

Todd A. Hammer
Marcel A. Quinn
HAMMER, QUINN & SHAW PLLC
100 Financial Drive, Suite 100
P.O. Box 7310
Kalispell, MT 59904-0310
Telephone:    (406) 755-2225
Facsimile:    (406) 755-5155
toddhammer@attorneysmontana.com
marcelquinn@attorneysmontana.com
Attorneys for Plaintiff

2017 NOV 22  PM 12: 35
FILED
BY _____
DEPUTY

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| WHITEFISH ENERGY HOLDINGS LLC, | Cause No. DV-17- **1189 D** |
|---|---|
| Plaintiff, | |
| vs. | APPLICATION FOR |
| ARC AMERICAN, INC., | PRELIMINARY INJUNCTION |
| Defendant | DAN WILSON |

COMES NOW the above-named Plaintiff, Whitefish Energy Holdings LLC ("Whitefish

Energy"), and hereby applies for a preliminary injunction: (1) enjoining Defendant Arc

American, Inc., ("Arc") from misrepresenting there are amounts due and owing under its

subcontract agreement with Whitefish Energy; and (2) ordering Arc to immediately withdraw

and correct all misrepresentations previously made in this regard, including its November 16,

2017 letter to the Puerto Rico Electric Power Authority ("PREPA") which resulted in the

withholding of tens of millions of dollars in payments due to Whitefish Energy. Such order is

appropriate to avoid irreparable harm and injury to Whitefish Energy.

3

## FACTS

Plaintiff Whitefish Energy Holdings LLC is a Montana limited liability company with its principal place of business in Flathead County, Montana. (Declaration of Andrew Techmanski filed contemporaneously herewith, ¶ 2.)

Whitefish Energy entered into a contract with The Puerto Rico Electric Power Authority ("PREPA") for electrical grid reconstruction after hurricane Maria. (Decl. Techmanski, ¶ 3.) On or about September 30, 2017, Whitefish Energy entered into a subcontract with Arc American, Inc. (hereinafter "Arc"). (Decl. Techmanski, ¶ 4.)

The subcontract is a "pay-when-paid" contract, specifying that payment from the owner, PREPA, is a condition precedent to payment being made by Whitefish Energy to Arc. It further specifies Whitefish Energy is required to pay Arc within seven days of receipt of payment from PREPA. The subcontract states:

> **10.2 Progress and Final Payments**. <u>Receipt of payment by Contractor from Owner for Subcontract Work is a condition precedent to payment by Contractor to Subcontractor</u>. Subcontractor acknowledges that it relies on the credit of Owner, not Contractor, for payment of Subcontract Work. Progress payments, shall be made to Subcontractor, for Subcontract Work satisfactorily performed, no later than seven (7) days after receipt by Contractor of payment from Owner for Subcontract Work...

(Decl. Techmanski, ¶ 4, Ex. A, pg. 2; emphasis added)

Under no scenario does the subcontract require or allow payment to Arc prior to Whitefish Energy being paid. Further, under no scenario does the subcontract allow Arc to seek or procure direct payment from PREPA when PREPA has not paid Whitefish Energy.

Whitefish Energy has timely paid all subcontractors, including Arc, for subcontractor services for which Whitefish Energy has received payment from PREPA. (Decl. Techmanski, ¶ 5.) There are outstanding invoices for work issued by Arc to Whitefish Energy for which

Whitefish Energy has not received payment from PREPA. (Decl. Techmanski, ¶ 6.) The

invoiced amounts, therefore, are not yet due and owing. The condition precedent for payment –

"receipt of payment by Contractor form Owner for Subcontract Work" – has not been fulfilled.

This is not due to any fault by Whitefish Energy, and in fact, the delayed payment by PREPA has

been exacerbated by Arc's improper actions in breach of the Subcontract.

More specifically, without any prior notice to Whitefish Energy, Arc sent a letter dated

November 16, 2017, directly to PREPA in which Arc told PREPA, "This is to inform PREPA

that Whitefish has failed to pay monies due and owing Arc under the Subcontract in an amount

exceeding $8,736,054.03." (Decl. Techmanski, ¶ 7, Ex. B.) However, the truth is Whitefish

Energy has not been paid by PREPA for any of the amount alleged. (Decl. Techmanski, ¶ 8.)

Arc's statement that the money is "due and owing" from Whitefish Energy is false, and contrary

to the plain and unambiguous terms of the subcontract.

In the same letter, Arc requested "PREPA forebear from paying to Whitefish the current

amount owed by Whitefish to Arc ... and instead pay those moneys directly to, or hold them in

escrow for, Arc..." (Decl. Techmanski, ¶ 7, Ex. B.) Arc's demand for direct payment from

PREPA is contrary to and in breach of the unambiguous payment provisions in the subcontract.

Arc agreed to accept payment from Whitefish Energy for services provided and only after

Whitefish Energy was paid by PREPA for the work performed. Arc is not permitted to

circumvent the payment structure, and seek payment directly from PREPA.

Whitefish Energy has been advised by PREPA, as a result of the letter and Arc's claim

for payment, PREPA must withhold from Whitefish Energy the amount of payment claimed.

(Decl. Techmanski, ¶ 9.) Despite Whitefish Energy's repeated requests to Arc to withdraw its

letter to PREPA, Arc has refused to do so. (Decl. Techmanski, ¶ 14.) PREPA's withholding of

payment due to Arc's improper and false letter has caused and contributed to Whitefish Energy

being forced to suspend operations in Puerto Rico due to the lack of payment. (Decl.

Techmanski, ¶ 12.)

On or about September 30, 2017, Whitefish Energy and Arc entered into a Non-Compete

Agreement. (Decl. Techmanski, ¶ 10.) As part of the Non-Complete Agreement, Arc agreed to

a non-solicitation clause which states:

> Non-Solicitation. From the date of execution hereof and up until and including
> one year after the last scope of work completion, Subcontractor shall not: (i)
> solicit the business of any person or entity who is Contractor's client or customer
> for the purpose of providing any services to such person or entity (whether Non-
> Compete Business, as hereinafter defined, or otherwise); (ii) cause, induce or
> attempt to cause or induce any client, customer, supplier, licensee, licensor,
> franchisee, employee, consultant or other business relation of Contractor or its
> business to cease doing business with Contractor, to deal with any competitor of
> Contractor or in any way interfere with his, her or its relationship with Contractor;
> or (iii) hire, retain or attempt to hire or retain any employee of Contractor or in
> any way interfere with the relationship between Contractor and any of its
> employees or independent contractors.

(Decl. Techmanski, ¶ 10, Ex. C, pg. 2, Section 2(b); emphasis added). The Non-Compete

Agreement prohibits Arc from "in any way interfer[ing]" with Whitefish Energy's relationship

with PREPA.

Arc's misrepresentation to PREPA that there are outstanding amounts due and owing

under the subcontract has directly interfered with Whitefish Energy's relationship and contract

with PREPA. Likewise, Arc's request for direct payment from PREPA contravenes the terms of

the prime contract and subcontract. Arc's conduct, including its November 16, 2017 letter, is

substantially and irreparably interfering with Whitefish Energy's relationship with PREPA, and

has caused PREPA to withhold payment from Whitefish Energy, which only exacerbates the

payment issues for Whitefish Energy and all of its subcontractors, including Arc. Whitefish

Energy is permitted to seek "injunctive relief from the District Court of Flathead County,

Montana, barring or preventing Subcontractor from... violating this Non-Compete." (Decl. Techmanski, Ex. C, pg. 2.) Such relief is appropriate.

Whitefish Energy is agreeable to PREPA paying Arc directly for any unpaid, approved invoices, contemporaneously with the payment of the balance of approved invoices to Whitefish Energy. (Decl. Techmanski, ¶ 15.) Arc, however, refuses to cooperate in this regard. (*Id.*) Arc is attempting to leverage the current payment issue to obtain benefits and releases to which Arc is not contractually or legally entitled. To withdraw the November 16, 2017 letter, Arc demands Whitefish Energy authorize PREPA to pay Arc more than it is currently due under the Subcontract, release Arc from a Non-Compete Agreement, and release all legal rights and obligations under the entire subcontract, which would include any issues with Arc's performance of work and indemnity obligations for safety and other issues. (Decl. Techmanski, ¶ 16.) Through its refusal to withdraw its false letter to PREPA, Arc is leveraging Whitefish Energy for a release of any and all claims against Arc while ignoring the plain and unambiguous terms of payment and conditions in the subcontract to which it previously agreed, including the condition precedent that Whitefish Energy be paid before Arc receives payment and Arc's obligations to perform safe and complete work without defects.

Given Whitefish Holding's contract with PREPA concludes on November 30, 2017 and Whitefish Holding has critical work it needs to complete for PREPA by that date, the non-payment of amounts due and cessation of work is and will cause great and irreparable injury to Whitefish Energy. (Decl. Techmanski, ¶ 13.)

Whitefish Energy has in good faith attempted to resolve the current dispute without the need for court involvement. Whitefish Energy now seeks the preliminary injunction authorized by Montana law and the express provisions of the Non-Compete Agreement.

## ARGUMENT

The grant or denial of a preliminary injunction is a matter which lies with the sound discretion of the trial court. *City of Billings v. County of Water Dist. Of Billings Heights,* 935 P.2d 246, 250 (Mont. 1997); *Shammel v. Canyon Resources Corp.*, 82 P.3d 912, 916 (Mont. 2003). Montana's statutes permit an injunction to be ordered:

> (1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;

> (2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant; [or]

> (3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual...

(§27-19-201, MCA).

Each of the subsections above provides independent grounds for the issuance of the requested preliminary injunction.

"In conducting a hearing on a motion for a preliminary injunction, it is not the province of a district court to determine matters that may arise during a trial on the merits." *Knudson v. McDunn* (1995), 271 Mont. 61, 65, 894 P.2d 295, 298. The relevant inquiry is whether the moving party has made out a *prima facie* case under any of the disjunctive subsections contained in §27-19-201, MCA, or shown "that it is at least doubtful whether or not he will suffer irreparable injury before his rights can be fully litigated." *Valley Christian Sch. v. Mont. High Sch. Ass'n,* 2004 MT 41, ¶ 18, 320 Mont. 81, 87-88, 86 P.3d 554, 558.

The subcontract is clear and unambiguous, calling for Arc to be paid within seven days of Whitefish Holds being paid by the owner, PREPA. The subcontract states:

**10.2 Progress and Final Payments.**  <u>Receipt of payment by Contractor from Owner for Subcontract Work is a condition precedent to payment by Contractor to Subcontractor.</u>  Subcontractor acknowledges that it relies on the credit of Owner, not Contractor, for payment of Subcontract Work.  Progress payments, shall be made to Subcontractor, for Subcontract Work satisfactorily performed, no later than seven (7) days after receipt by Contractor of payment from Owner for Subcontract Work…

(Ex. A, pg. 2; emphasis added).

In Montana, the construction and interpretation of a contract is a question of law.  Courts must interpret the language of contract provisions according to their plain, ordinary meaning.  *Ophys v. Fritz*, 2000 MT 251, ¶ 19, 301 Mont. 47, 11 P.3d 1192.

The fundamental tenet of modern contract law is freedom of contract; parties are free to mutually agree to terms governing their private conduct as long as those terms do not conflict with public laws. This tenet presumes that parties are in the best position to make decision in their own interest.  Normally, in the course of contract interpretation by a court, the court simply gives effect to the agreement between the parties in order to enforce the private law of the contract.

*Arrowhead School Dist. No. 75 v. Klyap,* 2003 MT 294, ¶ 20, 318 Mont. 103, 79 P.3d 250.

Here, the subcontract could not be plainer.  Payment from PREPA to Whitefish Energy is a "condition precedent" to payment being owed from Whitefish Energy to Arc.  As the Montana Supreme Court has stated, *"A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance… If the condition is not fulfilled, the right to enforce the contract does not come into existence." Mgt., Inc. v. Mastersons, Inc.,* 189 Mont. 435, 440-41, 616 P.2d 356, 360 (1980).

"Pay-if-paid" clauses are simply one example of a valid condition precedent.  As the leading contracts treatise, Williston on Contracts, states:

[I]t has long been the rule that, absent a statute prohibiting the provision, if the parties clearly do intend that the risk of nonpayment be borne by the subcontract and clearly express that intent by making the right of the subcontractor to be paid expressly conditional on the receipt of such payment by the contractor from the

owner, they may by contract allocate that risk, and the courts will enforce that freely bargained-for allocation of risk.

(8 Williston on Contracts § 19:59 (4th ed.)).

Moreover, the pay-when-paid clause is supported by Montana law. Section 28-2-2103(2)(a), MCA of Montana's Prompt Pay statute specifies, "Within 7 days after a contractor receives a periodic or final payment from an owner or a state agency, the contractor shall pay the subcontractor, if any, the full amount due the subcontractor in accordance with the subcontract for work performed or materials provided in accordance with that subcontract." Pay-when-paid clauses are valid and recognized under Montana statutory law. The subcontract is valid and enforceable as written.

Arc, in disregard of its subcontract with Whitefish Energy and Montana law, advised PREPA that in excess of eight million dollars is "due and owing" from Whitefish Energy, when in fact no funds were due and owing to Arc under the subcontract. Moreover, Arc requested PREPA to withhold funds due and owing to Whitefish Energy, and instead make direct payment of over eight million dollars directly to Arc. This was despite the fact total amount of Arc's invoices represented in Whitefish Energy's invoices pending before PREPA were less than a third of that amount. Arc's request interferes with Whitefish Energy's contract with PREPA, and is contrary to and in breach of the unambiguous payment provisions in the subcontract.

Arc's conduct renders it liable for the litany of causes of action alleged in the complaint, including negligent misrepresentation, breach of the covenant of good faith and fair dealing, tortious interference with business relations, negligence and breach of the Non-Compete Agreement. Whitefish Holdings is likely to succeed on such causes of action.

A preliminary injunction is appropriate under three of the three disjunctive subsections contained in §27-19-201, MCA.

Subsection (1) provides an injunction may issue "when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually." Whitefish Energy is entitled to the relief demanded, which includes injunctive relief to mandate compliance with the subcontract, Non-Compete Agreement, and Montana law.

Likewise, an injunction may issue under Subsection (2) which applies "when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant." Here, Arc's conduct has contributed to PREPA's withholding of tens of millions of dollars owed to Whitefish Holdings, resulting in Whitefish Energy being forced to suspend operations in Puerto Rico. PREPA's withholding of payments has also caused delays in payments to a dozen other subcontractors. Given Whitefish Holding's contract with PREPA concludes on November 30, 2017 and Whitefish Holding has critical work it needs to complete for PREPA by that date, the non-payment of amounts due and cessation of work is and will cause great and irreparable injury to Whitefish Energy.

Finally, Subsection (3) likewise justifies the issuance of the requested preliminary injunction. It applies "when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual..." Arc's actions directly contravene the payment term of the subcontract and breach the terms of the Non-Compete Agreement. Arc is acting in direct violation of Whitefish Energy's rights under the agreements and Montana law. Here, time is of the essence. Millions of dollars in payments are in limbo and critical work to restore key transmission lines in Puerto Rico has been suspended. In the absence of a preliminary injunction, which is expressly

authorized under the Non-Compete, resolution of this issue may be delayed months or even years. Lengthy litigation would be ineffectual to deal with the immediate issue at hand. Whitefish Energy is entitled to, and hereby requests, the Court to issue a preliminary injunction to require Arc to abide by the Subcontract and Non-Complete in order to preserve the status quo and allow payment from PREPA to allow the critical work necessary to the people of Puerto Rico to continue.

For the foregoing reasons, as well as the arguments and evidence to be presented at the preliminary injunction hearing, Whitefish Energy respectfully requests the Court to issue a preliminary injunction (a) enjoining Arc from representing there are amounts due and owing under its subcontract agreement with Whitefish Energy and (b) requiring Arc to withdraw and correct all misrepresentations previously made in this regard, including its November 16, 2017 letter to the Puerto Rico Electric Power Authority ("PREPA") which resulted in the withholding of millions of dollars in payments due to Whitefish Energy.

Dated this 22nd day of November, 2017.

HAMMER, QUINN & SHAW PLLC

Todd A. Hammer
Marcel A. Quinn
P.O. Box 7310
Kalispell, MT 59904-0310
Attorneys for Plaintiff

MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| WHITEFISH ENERGY HOLDINGS LLC, | Cause No. DV-17- *1189 D* |
| Plaintiff, | |
| vs. | SUMMONS |
| ARC AMERICAN, INC., | |
| Defendant | |

THE STATE OF MONTANA SENDS GREETINGS TO:

    Arc American, Inc.
    c/o Registered Agents Inc.
    3030 N. Rocky Point Dr., Ste 150A
    Tampa, FL 33607

    YOU ARE HEREBY SUMMONED to answer the Complaint in this action, which is

filed in the office of the Clerk of this Court, a copy of which is herewith served upon you in the

County wherein you reside, and to file your answer and serve a copy thereof upon the Plaintiffs'

Attorney within 21 days after the service of this Summons, exclusive of the day of service; and

in case of your failure to appear or answer, judgment will be taken against you, by default, for

the relief demanded in the Complaint.

    Witness my hand and seal of said Court this 22nd day of November, 2017.

HAMMER, QUINN & SHAW PLLC

Todd A. Hammer
Marcel A. Quinn
P.O. Box 7310
Kalispell, MT 59904-0310
(406) 755-2225

Peg Allison,
Clerk of the District Court

**RACHAEL R WOODS**
Deputy Clerk

2